## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.H.**

**No. 18-0256** (Taylor County 17-JA-42)

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Grandmother L.B., by counsel Keith Skeen, appeals the Circuit Court of Taylor County's February 20, 2018, order terminating her parental and/or custodial rights to J.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Terri L. Tichenor, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that this case involved aggravated circumstances and that the prior issues of abuse had not been corrected, making findings of fact that were not supported by the evidence, and denying her a post-dispositional improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the underlying proceedings, petitioner's parental rights to her children were involuntarily terminated in December of 2005. Petitioner's Child Protective Services ("CPS") history included referrals for refusal to obtain medical treatment, educational neglect, and several referrals for general neglect and lack of supervision. Despite having her parental rights to her two children terminated, petitioner obtained legal guardianship of her grandchild, J.H., the only child at issue in this appeal, in May of 2014.

In March of 2017, the DHHR filed the instant child abuse and neglect petition against petitioner alleging that she allowed the child around her biological mother unsupervised, against

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

court order. Specifically, in February of 2017, petitioner allowed the child to stay overnight with the mother. Upon learning that the child was being exposed to drug use, petitioner retrieved the child and called the police. However, during their investigation, the DHHR discovered that this was not the first incident wherein petitioner exposed the child to the mother as only eight days after obtaining guardianship of the child in 2014, petitioner allowed the mother to babysit the child. The DHHR also alleged that despite petitioner removing the child from the mother's home in February of 2017 due to drug use and insisting that she would not allow the mother around the child, she permitted the mother to move into her home. The petition also included numerous CPS referrals regarding petitioner's care of the child, such as her refusal to obtain medical treatment for the child in 2015 and educational neglect. In sum, the DHHR concluded that aggravated circumstances existed due to petitioner's prior termination of parental rights and that she abused and/or neglected the child due to having no substantial change in circumstances since that time, her neglect of the child's hygiene and education, her failure to prevent the mother from supervising and having inappropriate contact with the child, and failing to protect the child.

The circuit court held two adjudicatory hearings in June of 2017 and July of 2017. Petitioner stipulated to the allegations contained in the petition and requested a post-adjudicatory improvement period. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent/custodian.

The circuit court held two dispositional hearings in September of 2017 and February of 2018. Petitioner testified that her parental rights to her children were involuntarily terminated in 2005 due to her drug addiction. Since that time, petitioner addressed the issue and had been "clean" for nearly thirteen years. Petitioner also testified that she complied with drug screens as directed, all of which were negative. However, petitioner stated that she was unable to attend parenting classes as there had been no referral from CPS. Petitioner testified that she would participate in any services and presented the testimony of three friends who stated that they had not observed any abuse or neglect by petitioner. An interview of the child conducted by the Child Advocacy Center ("CAC") was submitted into evidence wherein the child disclosed that she often woke up in the middle of the night to discover that petitioner was gone and she would be alone for several hours. The child also disclosed that she had bruises caused by her mother, and that petitioner knew about the bruises and actively tried to cover them. Finally, the child stated that she did not feel safe in the home and did not want to return to petitioner's care.

After hearing evidence, the circuit court found that this was a case involving aggravated circumstances due to petitioner's prior involuntary termination of parental rights because of her drug addiction and failure to supervise her children. The circuit court noted that petitioner continued to allow the mother to have contact with the child after being removed from her custody, despite knowing of the mother's drug problem, and failed to cooperate fully with the DHHR by disclosing confidential information about the case. As such, the circuit court determined that petitioner was not amenable to services and found that there was no less-drastic alternative to termination of her parental and/or custodial rights and that such termination was in the child's best interest. It is from the February 20, 2018, dispositional order denying her motion

for an improvement period and terminating her parental and/or custodial rights that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in making findings of fact not supported by the evidence. Specifically, petitioner alleges that the circuit court erred in finding that she was not amenable to services and that she refused services. According to petitioner, she never refused services and demonstrated that she was interested in participating in the case. However, in support of her argument, petitioner cites to documents not included in the appendix on appeal. Moreover, the circuit court had sufficient evidence upon which to make these findings of fact. The circuit court viewed the interview of the child, heard testimony from several witnesses, and reviewed the family case plan and court summaries. The circuit court was also able to observe petitioner's continued divulgence of confidential information via social media, despite having been told several times not to do so. Based upon this evidence, the circuit court concluded that petitioner was not amenable to services, largely due to her failure to correct the conditions of abuse which first arose regarding her own children in 2005 and continued unabated in the instant proceedings. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). Because the circuit court was presented with ample evidence and was uniquely situated to weigh

---

[2]The mother voluntarily relinquished her parental rights to the child below. According to the DHHR, the father's identity was unknown and, as such, the circuit court terminated the unknown father's parental rights. The child was placed in a foster home with a permanency plan of adoption therein.

the same, we agree with its findings and further find that petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in finding that the case involved aggravated circumstances and that the prior circumstances of abuse and neglect had not been remediated. According to petitioner, her parental rights to her children were terminated based upon her drug abuse problem, which she alleges has been remediated. As such, petitioner argues that the circuit court should not have found that aggravated circumstances existed in this case. We disagree. We have previously held as follows:

[w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49-6-1 to -12 (1998) [now West Virginia Code §§ 49-4-601 through 49-4-610]. Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49-6-5b(a) (1998) [now West Virginia Code § 49-4-605(a)] is present.

*In re Kyiah P.*, 213 W.Va. 424, 427, 582 S.E.2d 871, 874 (2003) (quoting Syl. Pt. 2, *In the Matter of George Glen B.*, 205 W.Va. 435, 518 S.E.2d 863 (1999)).

Contrary to petitioner's assertions that her parental rights to her children were terminated based solely upon her prior drug abuse problem, the circuit court found that petitioner's parental rights to her children were terminated "due to drug addiction and failure to supervise her children, over a long period of time[.]" While it does appear that petitioner addressed her drug abuse problem, she did not demonstrate that she addressed her issues with supervising the children in her care. The record indicates that petitioner allowed J.H. to be supervised by her biological mother several times, against court order and despite her knowledge of the mother's drug abuse. The child also disclosed that petitioner was aware that her bruises were caused by the mother but actively tried to cover them. Moreover, the child disclosed that she often woke in the middle of the night to find herself alone for several hours and expressed fear of experiencing the same were she to be returned to petitioner's care. As such, we find that the DHHR properly filed a petition based upon aggravated circumstances as petitioner's parental rights to her children were previously terminated. Further, we find that the circuit court did not err in determining that petitioner failed to remedy the conditions of abuse and neglect as she clearly has not addressed her issues with properly supervising the children under her care since the prior termination.

Finally, petitioner argues that the circuit court erred in denying her a post-dispositional improvement period. According to petitioner, she complied with drug screens and obtained her own psychological evaluation, demonstrating that she would comply with an improvement period. Petitioner also claims that the circuit court erred in terminating her parental rights

4

without first employing a less-restrictive alternative, such as an improvement period. However, we find each of petitioner's arguments to be without merit.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

On appeal, petitioner failed to establish that the circuit court erred in denying her an improvement period. While it is true that petitioner testified to her willingness to participate in the terms and conditions of an improvement period, the evidence supported the circuit court's denial of the same. This is especially true in light of the fact that petitioner continually divulged confidential information via social media in direct violation of court order. Moreover, petitioner continues to maintain that her parental rights were previously terminated based solely upon her prior drug abuse problem when the record clearly demonstrates that she also received CPS referrals due to her neglect and failure to properly supervise her children. We have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.*, 215 W.Va. at 217, 599 S.E.2d at 640). Despite having had her parental rights to her children terminated under similar circumstances regarding improper supervision, the underlying petition was filed, in part, due to petitioner's failure to properly supervise J.H., as she allowed her to have contact with the biological mother. As set forth above, petitioner failed to acknowledge or address the conditions of abuse since her prior termination of parental rights. Therefore, an improvement period would have been an exercise in futility and we find no error in the circuit court's decision to deny petitioner the same when she failed to demonstrate that she was likely to participate in services.

We likewise find no merit to petitioner's claim that a less-restrictive alternative, such as an improvement period, should have been employed prior to termination of her parental rights. Not only does petitioner cite to no authority requiring circuit courts to grant parents improvement periods before terminating their parental rights, but this Court, in fact, has held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . . ." Syl. Pt. 4, in part, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 1, in part, *In re R.J.M.,* 164

W.Va. 496, 266 S.E.2d 114 (1980)). Moreover, "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. at 82, 479 S.E.2d at 592. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" Here, petitioner's parental rights to her own children were terminated based, in part, on her neglect and failure to properly supervise her children. After becoming the guardian of J.H., petitioner continued to behave in the same abusive manner by leaving the child unattended with the biological mother, against court orders and despite knowledge of her drug use. Petitioner actively tried to hide physical evidence of the biological mother's abuse and left the child alone, at night, for hours at a time. As such, despite having participated in services to address this condition of abuse in the prior proceedings, petitioner did not respond to these rehabilitative efforts. Accordingly, we find that there was sufficient evidence upon which to find that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and that termination was necessary for the child's welfare. As mentioned above, circuit courts are to terminate parental rights upon such findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 20, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  October 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II, suspended and therefore not participating